# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 17, 2013

## LARRY WAYNE WEBB v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-938   J. Randall Wyatt, Jr., Judge**

---

**No. M2013-00444-CCA-R3-PC   Filed December 26th, 2013**

---

The Petitioner, Larry Wayne Webb, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2010 convictions for forgery and identity theft, for which he is serving an effective twelve-year sentence as a Range III, career offender. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

James O. Martin, III, Nashville, Tennessee, for the appellant, Larry Wayne Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's convictions relate to his transferring title to a 1977 Corvette to an attorney as payment for his attorney's fees. The Petitioner received a Georgia certificate of title when he bought the Corvette, but he later wrote his then-girlfriend Penny Holt's name on the title as an owner. After providing the Department of Safety with an affidavit that stated falsely that she and the Petitioner were married, Ms. Holt obtained a Tennessee certificate of title listing herself and the Petitioner as the owners. She kept the certificate of title in her safety deposit box. The couple ended their relationship. At some point, the Petitioner asked Ms. Holt a couple of times for the certificate of title, but she did not provide it. He represented to the Department of Revenue that the certificate of title had been lost,

obtained a duplicate certificate of title, and paid his attorney's fees by providing the Corvette and the duplicate certificate of title. Someone other than Ms. Holt signed Ms. Holt's name on the duplicate certificate of title. The Petitioner was convicted of forgery and identity theft for the transaction. On appeal, this court denied relief. *State v. Larry Wayne Webb*, No. M2010-02547-CCA-R3-CD (Tenn. Crim. App. Mar. 7, 2012), *perm. app. denied* (Tenn. Aug. 15, 2012). The Petitioner filed the present post-conviction action.

At the post-conviction hearing, Jennifer Heaster, the Petitioner's sister, testified that she lived in Ridgetop, Tennessee, in April 2010 when the Petitioner's trial occurred. She said that no one contacted her or subpoenaed her but that if she had been called as a trial witness, she would have been available. She said the Petitioner bought the Corvette between April and June 2005. She said he brought the Corvette and a truck to her house in September 2005 to park the vehicles on her six-acre property for safekeeping.

Ms. Heaster testified that the Corvette remained at her house until the Petitioner wrecked his truck in January 2006. She said that the Petitioner returned the Corvette to her property in June or July 2006 and that it remained there until the Petitioner and Penny Holt purchased a house with a garage in June 2007. She said Ms. Holt and the Petitioner were dating but did not know how long they had been dating. She said that to her knowledge, Ms. Holt never had "anything to do" with or any ownership interest in the Corvette before June 2007. She said Ms. Holt never came to her house to borrow the Corvette. She identified photographs of the truck with body damage and the Corvette. She said a photograph of the Corvette with a Georgia license plate was taken at her house on November 1, 2005.

On cross-examination, Ms. Heaster testified that she was unaware of the Petitioner's trial or anyone trying to take the Petitioner's car. She said she first heard about the post-conviction case when an investigator contacted her. She said the Corvette never returned to her property after June 2007, nor had she seen the Petitioner or Ms. Holt driving it after June 2007. She was unaware Ms. Holt claimed to have an ownership interest in the car.

Trial counsel testified that he represented the Petitioner in general sessions court and at the trial. He said that after hearing some of the trial testimony, he contacted a friend at the Department of Safety or the court clerk's office and had documents faxed because he did not have the documents with him. He thought one of the documents, a title application submitted by Ms. Holt, was used as a trial exhibit. He identified faxed documents reflecting that they were faxed on "4-12 at 10:03." He said that before receiving the fax, he had not seen Ms. Holt's affidavit stating that she was married to the Petitioner. He knew the Petitioner and Ms. Holt were never married but did not know about the document. He could not recall Ms. Holt's exact words but said she testified that she signed the affidavit in order to have the car

-2-

titled jointly to the Petitioner and her. He said the title was issued in their names on July 12, 2007.

Counsel testified that due to his receiving the affidavit at 10:00 a.m. on the day of the trial, he was unable to research whether Ms. Holt should have received a title for the car. He said he did not know before the trial that an issue existed regarding whether Ms. Holt and the Petitioner were married. He acknowledged he did not make a pretrial motion to exclude the document or object when it was admitted into evidence showing Ms. Holt's ownership of the car. He agreed he did not have time to understand the document's importance and said he was familiar with the statute stating that a title should not be issued based upon fraudulent information. He said that he knew once he received the document Ms. Holt made a false statement and that he "tried to make as much hay about that as possible." He agreed he did not request a continuance after receiving the information.

Counsel testified that he did not talk to Frank Harris before the trial. He recalled that the Petitioner may have called Mr. Harris on the day of the trial to see if Mr. Harris could attend the trial but was unsure if he spoke with Mr. Harris. He said he knew the Petitioner was the only person involved in purchasing the car. He said that the car was purchased in another state and that the previous title reflected that Ms. Holt added her name on a different date in different handwriting. He said the Petitioner stated that Mr. Harris could testify that Ms. Holt was not involved in purchasing the car. He acknowledged that although Mr. Harris was an important witness, he did not subpoena Mr. Harris. He understood that Mr. Harris was going to appear voluntarily for the trial but that Mr. Harris had a health issue that prevented him from attending. He acknowledged he did not request a continuance in order for Mr. Harris to be present.

Counsel testified that he did not think he spoke with Ms. Heaster before the trial. He said that he may have met her at his office but that they never discussed the car's ownership. He said that although a "serious time lapse" existed between the Petitioner's purchase of the car and Ms. Holt's involvement, he was unable to demonstrate it at the trial. He said that although the Petitioner did not testify at the trial, the Petitioner told him that the Petitioner had the car for over a year before he began dating Ms. Holt.

Counsel testified that the Petitioner always maintained that he did not sign Ms. Holt's name to a duplicate title. He said that the Petitioner claimed he left the title at Ms. Holt's business for her to sign because she was not there and that when he returned the next day, her name was signed. He said the Petitioner assumed Ms. Holt signed the document. He agreed he did not consult a handwriting expert to examine the signature, although the State's theory was that the Petitioner signed Ms. Holt's name to the document. He agreed Ms. Holt stated in cross-examination that she knew the Petitioner signed her name on the document.

He did not think any proof contradicted Ms. Holt's testimony in this regard and said the Petitioner did not testify because of his prior criminal record. He said Ms. Holt testified that she never signed her name without her middle initial, H. He agreed that the signature on the title did not include a middle initial.

Counsel testified that the Petitioner came to his office multiple times on Sundays. Counsel said he was in court Monday through Friday, did not work on Saturday, and had client appointments on Sundays. He said that he also saw clients on Sundays who dropped by without an appointment and that he stayed until everyone had been seen. He said the Petitioner was familiar with his office protocol. He thought he and the Petitioner met the week before the trial but said the Petitioner did not have an appointment on the Sunday before the trial. He thought that the Petitioner came to his office on the Sunday before the trial but that for some reason, they did not meet. He said other people may have been waiting. He acknowledged providing post-conviction counsel with a computer disk of his file and said it did not contain any notes to show that he reviewed the defense with the Petitioner. He acknowledged he did not make a motion for judgment of acquittal based upon the statute regarding titles not being issued based upon fraudulent statements.

On cross-examination, counsel testified that he represented the Petitioner in other cases, as well. He said one of the other cases involved Mr. Harris and one was a domestic matter. He agreed the Petitioner was on bond and was able to meet with him at his office. He could not estimate the number of hours he spent with the Petitioner discussing the cases. He said that the Petitioner was very concerned about his legal matters and that he never stopped the Petitioner from coming to his office. He said that the Petitioner obtained new counsel at some point and that he did not represent the Petitioner through the conclusion of the other cases.

Counsel testified that he was unsure whether he received Ms. Holt's affidavit in a supplemental discovery response but said it was possible. He identified a supplemental discovery response containing Department of Revenue documents. He said the discovery response listed his address and had a certificate of service dated August 11, 2009. He identified Ms. Holt's affidavit as one of the Department of Revenue documents. He agreed the trial was about eight months after August 11, 2009. He agreed that he initially wanted to use the affidavit to show Ms. Holt was dishonest. He agreed he cross-examined Ms. Holt about this and argued it in his closing argument. He agreed a Department of Revenue official testified that the title Ms. Holt kept in her safe deposit box was a valid Tennessee title despite the false statement in the affidavit. He said that in his opinion, the title was valid.

Counsel testified that Ms. Holt admitted on cross-examination that she was not involved in the purchase of the car and that she did not provide any money for the purchase

or for a one-half ownership interest. He agreed that no one disputed at the trial that the Petitioner was the purchaser. He did not think the Petitioner and Ms. Holt knew each other when the Petitioner bought the car. He believed Ms. Holt testified that she did not know who wrote her name on the Georgia title.

Counsel testified that forgery could consist of actions other than writing someone else's name on a document. He agreed that if the Petitioner had someone else write Ms. Holt's name on the title and then used the title as if the signature were valid, forgery existed.

Counsel testified that at the trial, Ms. Holt denied the signature on the title was hers or that she gave anyone permission to sign her name. He said she stated she had the original title and would not have signed a duplicate title. He said that Ms. Holt's testimony seemed inconsistent about whether the Petitioner signed her name or if she did not know who signed it and that he "kept on pushing the point" in cross-examination. He said the State's argument was that although the Petitioner may not have written Ms. Holt's name, he knew she had not signed her name when he used the document.

Counsel testified that the Petitioner, a career offender, faced up to twenty-four years if he received two consecutive twelve-year sentences for his Class D felony convictions. He noted, though, that the prosecutor was under the impression the Defendant was convicted of a Class D felony and a Class E felony, which had a possible effective sentence of eighteen years. He said the trial court did not impose consecutive sentences. He said he argued for probation specifically and alternative sentencing generally. He said he did not specifically request community corrections or split confinement.

On redirect examination, counsel acknowledged that he did not cross-examine Ms. Holt about a signature she identified as hers in which she had not signed her middle initial. On recross-examination, he agreed the State presented several of Ms. Holt's signatures on checks and documents for the jury's use in comparing to the signature on the title.

The parties stipulated that Jane Eakes, the Petitioner's handwriting expert, would testify that the Petitioner did not write Ms. Holt's signature on the title. The affidavit of Frank Harris was received by stipulation. The affidavit stated that Mr. Harris had a pre-existing business relationship with the Petitioner before selling a Corvette to him. Mr. Harris stated that he would have been available to testify at the Petitioner's trial if he had been called. He said, though, the Petitioner's attorney never contacted him about the circumstances of the Corvette transaction or inquired whether he would be available to testify at the trial. Mr. Harris said he never received a subpoena for the trial. He stated that had he been called to testify, he would have said that the Petitioner purchased the Corvette in 2005 for $13,500, which he paid in installments over a couple of months. Mr. Harris stated

that he hand-delivered the Georgia title to the Petitioner. He said he had no knowledge that the Petitioner dated Ms. Holt at the time the Petitioner bought the Corvette. Mr. Harris stated that although he testified for the State at the Petitioner's sentencing hearing, the testimony concerned a business dispute in which he sought criminal charges against the Petitioner and that he had since determined that the Petitioner did nothing wrong. He said the Petitioner's conviction related to the other business matter was reversed. Counsel's file regarding the Petitioner's conviction proceedings was received as an exhibit.

After receiving the proof, the trial court filed an order with extensive findings of fact. The court denied relief. This appeal followed.

The Petitioner contends that trial counsel provided the ineffective assistance of counsel in failing to (1) investigate and call witnesses, (2) review discovery materials, (3) prepare for the trial, and (4) consult a handwriting expert. The State responds that the trial court did not err in denying relief. We conclude that the trial court properly denied relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or

"outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

# I

## Failure to Investigate and Call Defense Witnesses

The Petitioner contends that trial counsel was ineffective because he failed to investigate Jennifer Heaster and Frank Harris and did not present their testimony at the trial. The Petitioner argues that their testimony would have provided "a more complete account of the history of the car and whether it was reasonable to believe Ms. Holt had any legitimate interest in the car." Relative to this issue, the trial court's order states:

> The Court finds that Ms. Heaster was available and could have been interviewed and called to testify. However, the Court finds that her testimony would essentially be that she allowed the petitioner to park the Corvette at her home and that she never knew Ms. Holt to claim any ownership interest in the Corvette. This testimony would not rebut anything that Ms. Holt testified to. Moreover, this Court notes that [trial counsel] established what would have been the substance of Ms. Heaster's testimony through his cross-examination of Ms. Holt. The Court will not second-guess counsel's decision to elicit proof through cross-examination rather than through his own witness. The Court finds that this was a reasonable tactical decision.

> The petitioner further contends that he was denied the effective assistance of counsel because counsel failed to subpoena Mr. Harris, who, according to the petitioner, would have rebutted Ms. Holt's testimony. The Court finds that this testimony would also fail to rebut anything that Ms. Holt testified to. The Court therefore finds that this issue is without merit.

The record reflects that counsel did not investigate Ms. Heaster or Mr. Harris. As the Petitioner argues, their testimony could have be used to show that Ms. Holt did not have any involvement in the purchase of the Corvette in 2005. Ms. Holt admitted as much in her cross-examination at the trial. We note, as well, that the trial evidence established the car was titled jointly to Ms. Holt and the Petitioner in 2007. The Petitioner was aware Ms. Holt's name appeared on the title before he attempted the title transfer that gave rise to his convictions. Whether Ms. Holt originally had an ownership interest in the car and whether

her name was later added to the title was not disputed. Although the trial court did not specifically address whether counsel's performance was deficient, we conclude that the Petitioner failed to show deficient performance by clear and convincing evidence. Regarding prejudice, the record supports the court's conclusion that failure to investigate Mr. Harris and Ms. Heaster and present their testimony about the Petitioner's sole responsibility for purchasing the Corvette did not prejudice the Petitioner.

## II

### Failure to Review Discovery Materials

The Petitioner contends that trial counsel provided ineffective assistance by failing to review discovery materials, leaving counsel unprepared to defend him at the trial. He argues that if counsel had promptly reviewed the affidavit in which Ms. Holt falsely stated that she was married to the Petitioner, he would have been aware of additional defenses he could have presented at the trial. Relevant to this issue, the trial court stated:

> The Court finds that [counsel] received a copy of the affidavit in the State's Supplemental Discovery Response, which was filed on August 11, 2009. The Court finds that [counsel] either did not see the affidavit in the discovery, or that he did not remember seeing it when he testified at the post-conviction hearing. The Court finds that [counsel] received a copy of the affidavit on the morning of trial. The Court finds that [counsel] knew that the petitioner and Ms. Holt had never been married and recognized that Ms. Holt lied in the affidavit. The Court finds that [counsel] decided to use the fraudulent affidavit to impeach the credibility of Ms. Holt at trial.
>
> . . . .
>
> The Court finds that, while [counsel] may have made a tactical decision to use the fraudulent affidavit to impeach Ms. Holt's credibility, this decision was not made with the benefit of a full picture of what the available options were. It was not as if [counsel] had reviewed the affidavit prior to trial, analyzed its implications, and made a tactical decision to use it for impeachment. Rather [counsel] was unaware of the document, which was available to him months before trial, and, on the morning of trial, decided to use it the best way he knew how given the time constraints. The Court finds that [counsel's] decision to use the affidavit was not a tactical decision made after reasonable preparation, but was instead a decision made after inadequate preparation.

Regarding prejudice, the trial court rejected the Petitioner's argument that counsel could have had the certificate of title suppressed or excluded as evidence because it was obtained based upon a fraudulent affidavit. The court noted that the Petitioner unsuccessfully argued in the appeal of his convictions that he could not be guilty of the offenses because Ms. Holt had no legal interest in the Corvette. The court also noted that this court determined that notwithstanding Ms. Holt's misrepresentation, the Defendant's intent to share ownership in the Corvette with Ms. Holt was shown by his writing her name on a Georgia certificate of title and that lawful ownership was not an element of the charged offenses. The court concluded that the fraudulent affidavit had no effect on Ms. Holt's ownership interest or the viability of the charges and that the Petitioner failed to show that counsel's failure to challenge the admission of the certificate of title prejudiced the Petitioner.

The record supports the trial court's determination that counsel's performance was deficient for failing to review the certificate of title when it was provided in discovery. Regarding the issue of prejudice, the Petitioner argues, "The fact that Holt's fraud should have prevented the title from issuing would have provided further support for the argument that Mr. Webb possessed a good faith belief that it was his car and his conveyance of it to a third party came with no criminal intent toward Ms. Holt." As a component of plain error review of the trial court's admission of the Tennessee certificate of title, this court noted in the appeal of the convictions that the false statement in Ms. Holt's affidavit did not invalidate her ownership interest in the car. *Larry Wayne Webb*, slip op. at 9; *cf. Smith v. Smith*, No. 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983) ("[T]he intention of the parties, not the certificate of title, determines the ownership of an automobile."). The certificate of title was admissible evidence to show the Petitioner's guilt of the offenses.

As this court likewise noted in the previous appeal, legal ownership was not an element of forgery or identity theft. Relative to forgery, the issue was whether the Petitioner altered, made, completed, executed, or authenticated a writing as the act of another person without the person's authorization. *See* T.C.A. § 39-14-114(b) (2010). Relative to identity theft, the issue was whether the Petitioner knowingly obtained, possessed, bought, or used Ms. Holt's personal identifying information "[w]ith the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services, or medical information" in Ms. Holt's name without her consent or the authority to obtain, possess, buy, or use her identifying information. *Id.* § 39-14-150(b) (2010) (amended 2011). We note that the Petitioner was not charged with theft of property. *See id.* § 39-14-103 (2010). Proof that the Petitioner had a mistaken belief that he was the sole owner would have been unavailing. Because the Petitioner's proposed defense would not have provided a valid basis for avoiding criminal liability, he has not shown that he was prejudiced by counsel's deficient performance.

### III

### Failure to Prepare for the Trial

The Petitioner contends that trial counsel failed to prepare for the trial. He argues that counsel's lack of preparation is shown by counsel's having received the false affidavit eight months before the trial and having represented the Petitioner beginning the general sessions court, yet counsel called an acquaintance on the morning of the trial to have the documents faxed to the courthouse because he did not have them with him. He argues that the evidence shows counsel never reviewed the documents and did not know they were provided to him, which, he says, shows counsel was unprepared for the trial. He argues, as well, that had counsel been prepared, he could have made a pretrial motion to exclude the Tennessee certificate of title as invalid based upon the false affidavit Ms. Holt provided to obtain it. The State responds that notwithstanding the court's finding that counsel's performance was deficient, the Petitioner failed to show that he was prejudiced by counsel's performance. We agree with the State.

The trial court found that counsel received the affidavit in the discovery materials and either did not see it or did not recall seeing it. The court found "that [counsel's] decision to use the affidavit was not a tactical decision made after reasonable preparation, but was instead a decision made after inadequate preparation." The court concluded that counsel's performance was deficient. The court rejected, though, the Petitioner's contention that he was prejudiced by counsel's deficient performance. It concluded that the title was valid notwithstanding the false affidavit Ms. Holt used to obtain it and that Ms. Holt's supplying false information did not negate the Petitioner's culpability.

The record supports the trial court's determination that counsel's performance was deficient. Regarding prejudice, we have considered the Petitioner's argument that had counsel been prepared, he could have filed a motion to suppress or a motion *in limine* to exclude the Tennessee certificate of title on the basis that in accord with Tennessee Code Annotated section 55-3-112 (2012), it never should have been issued. Section 55-3-112(1) provides, in part, that the Department of Safety "shall refuse to issue a title . . . [if the] application contains any false or fraudulent statement[.]" As we noted in section II above and in the Petitioner's previous appeal, the false affidavit did not invalidate Ms. Holt's ownership interest in the car or the validity of the Tennessee certificate of title. The Petitioner has not identified a basis upon which the certificate of title might have been suppressed or excluded.

We have considered the Petitioner's argument that even if the certificate of title was admissible, counsel's deficient performance kept him from presenting a defense. He argues that if the jury had known Ms. Holt never should have received the Tennessee certificate of

title, there is a reasonable probability they would have believed he had no intent to harm her or commit an unlawful act. The relevant questions of intent, though, related to the Petitioner's intent in obtaining a duplicate certificate of title by falsely stating that the original was lost and his intent in providing the duplicate certificate containing a signature that purported to be Ms. Holt's in exchange for legal services. Even if the Petitioner were able to demonstrate that the title was erroneously issued, he would still have to contend with Ms. Holt's testimony that they co-owned the car and the evidence he wrote Ms. Holt's name as an owner on the Georgia certificate of title. The trial court did not err in concluding that there was no reasonable probability the result of the trial would have been different if counsel had prepared adequately for the trial and that the Petitioner failed to establish prejudice from counsel's deficient trial preparation.

## VI

### Failure to Consult a Handwriting Expert

The Petitioner contends that counsel provided the ineffective assistance of counsel because he failed to consult a handwriting expert, who could have testified that the Petitioner did not sign Ms. Holt's name on the duplicate certificate of title he provided as payment, along with the Corvette, for legal services. The State counters that the Petitioner failed to prove counsel was ineffective. We agree with the State.

The trial court stated:

The Court finds that the proof at trial did not necessarily establish, nor did it have to establish, that the petitioner was the person who signed Ms. Holt's name to the duplicate certificate of title. The Court finds that [counsel] elicited through his cross-examination of Ms. Holt that she did not know whether the petitioner was the person who signed her name to the duplicate certificate of title. The Court finds that even if a handwriting expert had been called to testify that the petitioner did not sign Ms. Holt's name, the jury still could have convicted the petitioner based on the theory that the petitioner knew someone else had signed Ms. Holt's name. The Court finds that the State argued both theories to the jury at trial. The Court finds that this expert would not have substantially helped the petitioner. The Court does not find that [counsel's] failure to call a handwriting expert fell below the range of competence demanded of attorneys in criminal cases.

Although the Petitioner offered expert proof at the post-conviction hearing that Ms. Holt's signature was not his handwriting, his culpability did not hinge solely on whether he

signed Ms. Holt's name. Forgery may be committed by altering, making, completing, executing or authenticating a writing. *See* T.C.A. § 39-14-114. We have reviewed the record of the conviction proceedings, and it reflects that the jury was fully instructed on the means by which forgery could be committed. Ms. Holt testified at the trial that she did not sign the duplicate certificate of title or give the Petitioner permission to sell the Corvette. *Larry Wayne Webb*, slip op. at 2. The State offered proof that months after he gave the Corvette and the title to his attorney to pay his attorney's fees, the Petitioner told Ms. Holt that the car was being repaired in another city. *Id*. The trial court did not err in concluding that counsel's performance was not deficient and that the Petitioner did not show prejudice due to the lack of a handwriting expert.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE